CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Isabel Rose Masanque, Esq., SBN 292673
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
IsabelM@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**Shirley Lindsay**,

Plaintiff,

v.

**Labrea9 LLC**, a California Limited Liability Company; and Does 1-10,

Defendant.

**Case:** 2:18-CV-08852-PA-MAA

**Plaintiff's Reply Brief in Support of Motion for Summary Judgment**

Date: July 15, 2019
Time: 1:30 p.m.
Ctrm: 9A

Hon. Judge Percy Anderson

`

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

In opposition to Plaintiff's motion, Defendant claims that plaintiff lacks standing to seek a van accessible parking space; that Plaintiff's ADA claims is moot; and that it is not readily achievable for Defendant to remedy the remaining slope issues within the accessible parking space. As outlined below, all of these arguments lack merit. Plaintiff meets all requirements for the broad and liberal test for standing in ADA cases under the *Chapman* analysis. Moreover, a plain reading of the 1991 Standards demonstrate that van accessible parking spaces are not limited to use by wheelchair users. Furthermore, Plaintiff's ADA claim is not moot because the accessible parking space continues to have slopes exceeding the maximum permitted under ADA standards. Defendant does not dispute that the slopes exist and also fail to support its affirmative defense that remedying the slopes is not readily achievable.

## II. PLAINTIFF HAS MET THE BROAD AND LIBERAL TEST FOR STANDING IN ADA CASES

Given the generous and broad standing requirement for ADA cases, Defendant's arguments against standing lack merit. Decades ago, the Supreme Court held that in civil rights cases—especially where private enforcement suits are the primary method of obtaining compliance—standing must be given a "generous construction" and defined "as broadly as is permitted by Article III of the Constitution."[1] The Ninth Circuit has expressly applied this holding to ADA cases: "The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights

[1] *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 & 212 (1972).

cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act."[2]

In *Chapman v. Pier 1 Imports,*[3] which was decided by an *en banc* panel. *Chapman* holds that an ADA plaintiff: (1) "must demonstrate that he has suffered an injury-in-fact," and (to obtain injunctive relief), (2) demonstrate a "real and immediate threat of repeated injury" in the future.[4] Plaintiff will discuss and apply each element to the facts of the present case.

**A. Plaintiff suffered an injury in fact because she personally encountered the inaccessible parking conditions at the Restaurant on July and September 2018.**

Under the ADA, the general rule is that persons with disabilities are entitled to "full and equal enjoyment" of facilities, privileges and accommodations offered by places of public accommodation.[5] A specific act of discrimination is the "failure to remove architectural barriers" that are readily achievable to remove.[6] The *Chapman* court held, therefore, a plaintiff's rights are violated under the ADA "when a disabled person encounters an accessibility barrier [that] interferes with the plaintiff's full and equal enjoyment of the facility."[7]

But what constitutes a barrier that interferes with full and equal enjoyment? *Chapman* answered this question definitively: "Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, *it will impair* the plaintiff's full and equal access, which

---

2 *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 -1040 (9th Cir. 2008).
3 *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).
4 *Chapman*, supra, 631 F.3d at 946.
5 42 U.S.C. § 12182(a).
6 42 U.S.C. § 12182(b)(2)(A)(iv).
7 *Chapman*, supra, 631 F.3d at 947.

constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element . . . ."[8] This is an *objective* test:

> A disabled person who encounters a "barrier," i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. Indeed, by establishing a national standard for minimum levels of accessibility in all new facilities, the ADAAG removes the risk of vexatious litigation that a more subjective test would create. Those responsible for new construction are on notice that if they comply with the ADAAG's objectively measurable requirements, they will be free from suit by a person who has a particular disability related to that requirement.[9]

In the present case, Ms. Lindsay drives a specially equipped van.[10] During her visits to the Restaurant, she found that there was no van accessible parking space for her to park her van. As outlined in Plaintiff's motion, there is no question that the dimensions of the parking space did not meet the requirements for a van accessible parking space, which Defendant does not dispute.

Instead, the defense claims that Ms. Lindsay does not have standing to seek a van accessible parking space because she does not consistently use a wheelchair and did not use a wheelchair on the dates of her visit. To begin, Ms. Lindsay drives a specially equipped van. The designated accessible parking space at the Restaurant on the dates of Ms. Lindsay's visits measured only 166 inches wide, whereas a van accessible parking space provides a space and access aisle that have a combined width of at least 192 inches wide.[11] Therefore, Ms. Lindsay needs a van accessible parking space to park her van and conveniently exit her vehicle.

---

[8] *Chapman*, supra, 631 F.3d at 947 (emphasis added).
[9] *Chapman*, supra, 631 F.3d at 948, fn. 5 (internal cites and quotes omitted for readability).
[10] See DKT No. 25-5, Declaration of Lindsay, ¶ 3.
[11] See DKT No. 25-2, Plaintiff's SUF, SUF #12, 13.

More importantly, however, Defendant fails to provide any legal justification for the conclusion that only wheelchair users are entitled to use van accessible parking spaces. To the contrary, the language of 1991 Standards make clear that van accessible parking spaces are not even limited to use by van users and therefore certainly not limited to use by wheelchair users. In the section describing van accessible requirements, the 1991 Standards explains:

> However, [a non-van accessible aisle] does not permit lifts or ramps to be deployed and still leave room for a person using a wheelchair **or other mobility aid** to exit the lift platform or ramp…A sign is needed to alert van users to the presence of the wider aisle, but the space is not intended to be restricted only to vans.

1991 Standards § A4.6.3 Parking Spaces. (emphasis added).

If a van accessible parking space is not intended to be restricted only to vans, this means even disabled persons using cars without lifts or platforms may also use the van accessible parking space. Additionally, the plain language of this section also contemplates that disabled persons using "other mobility aids" would also benefit from the additional space provided in a compliant van accessible parking space.

Thus, there can be no dispute that Mr. Lindsay suffered an injury in fact during her visits in July and September 2018.

**B. Plaintiff has standing to obtain injunctive relief because he is deterred from returning to Restaurant until the unlawful barriers are removed.**

The final question before the court in a standing inquiry is whether a plaintiff can establish that there is ongoing injury or a real likelihood of

future injury.[12] It is axiomatic that if there is no ongoing or likely future injury, then a plaintiff has no standing for injunctive relief. Stating an intention to return to a store after the barriers have been fixed is sufficient to establish standing: "When asked in his deposition whether he had any plans to return to the store, Doran answered, 'Yes, once it's fixed.' This deposition testimony demonstrates both *Doran*'s continued deterrence from patronizing the store and his intention to return in the future once the barriers to his full and equal enjoyment of the goods and services offered there have been removed."[13] The *Doran* court summarized, "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent."[14] A plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'"[15]

In the present case, Ms. Lindsay is threatened with imminent injury because the designated accessible parking space remains out of compliance with ADA standards (outlined further, below). Ms. Lindsay visited the Restaurant on two prior occasions—July 2018 and September 2018—and has stated that once the violations are removed, she plans to visit the Restaurant on a regular basis.[16]

Moreover, the Ninth Circuit has found "actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best*

---

[12] *Chapman*, supra, 631 F.3d at 946-47.
[13] *Doran*, 524 F.3d 1034 (9th Cir. 2008).
[14] *Doran*, supra, 524 F.3d at 1041.
[15] *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002).
[16] See DKT No. 25-5, Declaration of Lindsay, ¶¶ 5, 13.

*Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008). Here, Ms. Lindsay lives less than 10 miles away from the Restaurant. The defense, nonsensically, tries to portray this as a substantial distance. However, a 10 mile drive takes less than 20 minutes and Ms. Lindsay has already made this drive twice to eat at the Restaurant because she enjoys the food there.[17] And as noted above, she is willing to do so again when Defendant removes the barriers.[18] Thus, there is no question that there is ongoing injury or a real likelihood of future injury under these circumstances.

In sum, Plaintiff has met each of the requirements under *Chapman* to establish standing.

## III. THE DESIGNATED ACCESSIBLE PARKING SPACE REMAINS NON-COMPLIANT THEREFORE PLAINTIFF'S ADA CLAIM IS NOT MOOT

Next, the defense claims that Plaintiff's claim for injunctive relief is moot. The Ninth Circuit has held that "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury [that] continues so long as equivalent access is denied."[19] Here, the designated accessible parking space remains inaccessible because of slopes exceeding 2.083%.[20] These barriers are within the scope of Plaintiff's Complaint,[21] therefore Defendant's contentions regarding amendment are irrelevant. More importantly, Defendant's expert confirmed the 3.0% and 6.9% slopes found

---

[17] See DKT No. 25-5, Declaration of Lindsay, ¶ 5.
[18] See DKT No. 25-5, Declaration of Lindsay, ¶ 13.
[19] *Civ. Rights Educ.*, 867 F.3d at 1100-1101.
[20] See DKT No. 25-2, Plaintiff's SUF, SUF #19-21.
[21] See DKT No. 1, Complaint, ¶¶ 13, 15, 35-37.

by Ms. Kent and Mr. Taylor.[22] Therefore, injunctive relief is not moot due to these remaining slope issues.

Furthermore, Defendant only recently brought the striping of the accessible parking space into compliance. However, the ADA not only requires that businesses provide accessible facilities, i.e. facilities that physically comply with the Access Standards, but they have an ongoing duty to ensure that those accessible features remain ready to be used by persons with disabilities: "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily achievable to and usable by persons with disabilities . . . ." 28 C.F.R. § 36.211(a). The Department of Justice explains the purpose of this Regulation:

> Section 36.211 Maintenance of Accessible Features
>
> Section 36.211 provides that a public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part. The Act requires that, to the maximum extent feasible, facilities must be accessible to, and usable by, individuals with disabilities. This section recognizes that it is not sufficient to provide features such as accessible routes, elevators or ramps, **if those features are not maintained in a manner that enables individuals with disabilities to use them.**

28 C.F.R., Part 36, Appendix C, § 36.211 (emphasis added). "A violation of the ADA can occur where a defendant's business is in compliance with ADAAG requirements, but that defendant does not maintain its compliant features in a useable manner." *Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1227-28 (S.D. Cal. 2011).

In other words, merely because a handicap parking space has now been freshly painted again, does not mean that it will also not be permitted to

---

[22] See DKT No. 26-2, Declaration of Serafin, ¶ 9.

fade away or be painted over once the smoke clears from this case. This is particularly true where the defendant have a proven history of failing to maintain their accessible parking spaces in a usable condition, such as here. Because the parking lot striping will fade and will need to be repainted every few years, it is very easy for the defendant to return to their previous ways and not provide a compliant parking space. Parking painting is not permanent and always in flux. It is uncontestable that failure to maintain parking lot striping is one of those frequently occurring, easily recurring violations and where a defendant has demonstrated a past apathy toward its legal obligations and a failure to comply with the law, a "voluntary" fix after being hauled into court does not meet the "formidable burden of demonstrating that it is absolutely clear the alleged wrongful behavior could not reasonably be expected to recur." *Id.* at 860, *quoting*, *Friends of the Earth, Inc.*, 528 U.S. at 190. The defendants fail to establish mootness.

Thus, if the Court finds that there was a parking lot violation, injunctive relief is also not moot because the Court can certainly order the defendant to maintain the parking lot in compliance with the ADA accessibility standards. See *Lozano v. C.A. Martinez Family L.P.*, 129 F. Supp. 3d 967, 971 (S.D. Cal. 2015) (finding ADA claim not moot because "[d]efendants could run afoul of the ADA in the future by mere inaction and allowing the paint on the accessible spaces to fade").

## IV. DEFENDANT FAILS TO REBUT PLAINTIFF'S SHOWING THAT PROVIDING AN ACCESSIBLE PARKING SPACXE IS NOT READILY ACHIEVABLE

Finally, the defense claims that providing a compliant van accessible parking space is not readily achievable. In *Colorado Cross Disability Coalition v. Hermanson Family Ltd. P'ship I*, 264 F.3d 999, 1005-1006 (10th

Cir.2001), the court adopted the following approach: wherein Plaintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable, i.e., can be accomplished easily and without much difficulty or expense. If Plaintiff satisfies this burden, Defendant then has the opportunity to rebut that showing. Defendant bears the ultimate burden of persuasion regarding its affirmative defense that a suggested method of barrier removal is not readily achievable.[23]

Here, Plaintiff has demonstrated that creating accessible parking spaces is readily achievable because it is the type of action presumed to be readily achievable under the law. 28 C.F.R. § 36.304(b)(18). Thus, the burden shifts to defense to rebut this showing. However, the defense has failed to do so. In its opposition, the defense claims that the parking area, as well as "all the buildings must be demolished and the property re-graded" in order to bring the slope within the compliant range. However, the defense exaggerates and misstates its own expert's testimony in an attempt to mislead the court. Defendant's expert asserts only that "demolition of the concrete slab between the building and the North wall" would be required, in addition to re-grading and a new concrete slab.[24] It does not require that "all the buildings" be demolished, as the defense falsely states. Notably, while Defendant's expert claims that the alternate location proposed for the van accessible parking space is "not considered feasible",[25] no opinion is given regarding the feasibility of the first option (removal and re-grading of the concrete slab in the existing parking area).

Additionally, the defense has not put forth any argument regarding the financial feasibility of remediation because they have not provided any

---

[23] See also, *Doran v. Del Taco*, 2005 WL 3478136 (C.D. Cal. 2005) adopting the Colorado Cross Disability burden shifting analysis and reaffirming that "readily achievable" is an affirmative defense.

[24] See DKT No. 26-2, Declaration of Serafin, ¶ 10; DKT No. 26-2, Exhibit A to Declaration of Serafin, p. 7, ¶ 4.

[25] See DKT No. 26-2, Declaration of Serafin, ¶ 11.

figures as to the cost of re-grading or defendant's financial ability to complete the repairs. Because the defense has failed to adequately dispute feasibility (difficulty) and cost (expense), they have failed to rebut Plaintiff's showing that providing accessible parking is readily achievable, and in turn, failed to prove readily achievable as an affirmative defense.[26]

## V. CONCLUSION

For the foregoing reasons, Plaintiff's respectfully requests that the Court grant her motion for summary judgment.

Dated: July 1, 2019

Center for Disability Access

By: <u>*/s/ Isabel Rose Masanque*</u>
Isabel Rose Masanque
Attorneys for Plaintiff

[26] See *Doran v. Del Taco*, 2005 WL 3478136 (C.D. Cal. 2005) adopting the *Colorado Cross Disability* burden shifting analysis and reaffirming that "readily achievable" is an affirmative defense.